## Purnell's Petition

*G. Harmon Webb*, for Commonwealth.

*Frank B. Rhodes* and *William H. Rhodes*, for defendant.

MacDADE, J., February 17, 1933.—On February 11, 1933, after hearing before the court in banc upon petition of defendant to set aside a revocation by the registrar of motor vehicles of his operator's license, by reason of authority vested in the said registrar, together with oral argument and briefs, after due consideration thereof the court did make an order in effect that the petition to

set aside the revocation should be dismissed and that the order of revocation be sustained sec. reg. et sec. leg.

To supplement the formal order we desire to add reasons therefor, as follows: In the summer of 1932, the petitioner, a colored man, 60 years old, who at that time had been a licensed operator for 10 years, was driving his automobile through the streets of Media. A State highway patrolman observed that the petitioner was driving very slowly and accordingly followed the petitioner on the patrolman's motorcycle. When the petitioner arrived at the intersection of Baltimore Avenue and Providence Road, the patrolman stopped him and asked to see his driver's license. During the conversation, the policeman obtained an admission from the petitioner that he could not read nor write. He then asked him if he could tell what kind of a sign there was at the intersection, and the petitioner properly identified it as a "Stop" sign.

However, the policeman turned the name of petitioner in to the Department of Revenue, which, on September 10, 1932, sent to the petitioner an "official notification of the withdrawal of operating privilege", suspending the petitioner's operating privilege indefinitely and requiring him to give up his license.

It appeared also that the application for an operator's license was made out by another. The defendant never signed his name to the application and in these respects practiced a fraud upon the Department of Revenue.

Whereupon, within the 30 days allowed by the Act of June 22, 1931, P. L. 751, the petitioner took an appeal to this court for a hearing to determine whether or not his license should be suspended. At the hearing, it was frankly admitted by the petitioner that he could not read nor write. It also appeared that the petitioner's operator's license had been signed by somebody else and that the petitioner had put an "X" mark as his signature. The petitioner also testified that he had done this on all his operator's licenses for the years prior to 1932. The petitioner's theory was that, even though he could not read nor write, he could interpret traffic signs. In order to test him out on this, the attorney for the Commonwealth produced a great many pieces of cardboard somewhat smaller than a dollar bill upon which were printed various road signs. Among the first to be shown the petitioner was the sign "Dangerous Curve" and on the other side "Go Into Second Gear." Signs such as these the petitioner was not even able to guess at, let alone read, and, by the time the really important and familiar signs arrived, he was utterly unable properly to identify a single one of those shown him. He could not say what the wordings were thereon.

The Act of May 1, 1929, P. L. 905, sec. 604 (a) 8 reads: "When unable to understand warning or direction signs in the English language", and this means therefore that when a person comes within this clause an operator's license shall not be issued.

We think the Commonwealth should be upheld in the revocation of this operator's license, not only for the reason that the above act of assembly forbids any one operating who cannot read or write the English language, but from common experience it is a well-known fact that to operate an automobile today on the public highways one must be alert and able to understand and read the various signs denoting danger, etc., which the State has placed on the highways for the protection of the citizens. An automobile is in itself not inherently dangerous, but it is the operation of an automobile that does make it dangerous. Therefore, the Commonwealth in the best interests and protection of the people at large must make the proper regulations in the advancement of these safeguards.

With this expression of our views we believe our position tenable; hence, the order, supra, that the defendant's petition be dismissed and the order of the registrar of motor vehicles revoking the operator's license of Samuel Purnell be sustained.  From William R. Toal, Media, Pa.